May it please the court, my name is Kelly Reynolds and I represent the petitioner Cesar Amaya in this matter I would like to try to reserve one minute for a rebuttal In this case, we have a Board of Immigration Appeals bereft of any analysis appeals decision bereft of any analysis and an immigration judge decision that merely stated That none of the official reports Supported Mr. Amaya's contention that he was more likely than not to be tortured. In fact the immigration As an initial matter, I believe that this court is going to it would have to look to the immigration judge's decision Because the Board of Immigration Appeals reaffirmed it or concurred with it in simply a one sentence In simply one sentence So if you look to the immigration judge's review or analysis with regard to the claim under the Convention Against Torture He goes through two reports the profile of asylum claims and the country conditions the State Department country conditions Reports and says well neither of these say that it's more likely He's more likely than not to be tortured and then the immigration judge made the very strange Finding that if 38,000 people were deported to El Salvador in 2005 that Mr Amaya would have had to demonstrate that 19,001 people Were tortured by the government right and let's assume that statement is both strange and incorrect Was there My guess my question in a sort of a general way is is it just an errant bad statement in an otherwise analytical IJ report I don't think it's on page 9 and the the IJ does have an 11 page report I understand it only a small smaller relatively smaller portion of it deals with With the cat claim, but the IJ spends a lot of time going through the country report and and His his analysis of the expert witness and so do we throw out the baby with the bathwater? What the issue is he actually didn't spend a lot of time discussing his analysis of the expert witnesses testimony He spent one paragraph according to my Recall of the immigration judge's decision. He said he finds him As a ring of truth, but he doesn't find his opinion in regard to likelihood is is true because he looks at he looks at The report and some people agree with him But neither of them say it's more likely than not right that a tattooed young member is likely to be tortured or killed he he analyzes the experts testimony finds an incredible person, but Doesn't find the same expert as we have in all these cases, but doesn't find that he's he's very convincing Well, I guess me ask the question differently if that if that Statement let's call it the errand statement incorrect statement weren't in this IJ's findings Would there be substantial evidence to support? No, your honor because there's no real discussion with regard to the cat claim of what actually already had happened to mr Amaya, we were a case here where mr. Amaya was deported in April August of 2004 he was Taken off of a bus pistol-whipped beaten and taken to jail in November of 2004 He was released one week later. No charges and Was told that he got lucky because his arrest coincided with a riot where the human rights agencies became involved and they started Releasing people who had not had charges But the IJ does discuss that he doesn't quite say it in those terms when pages 8 and 9 does discuss this incident He discusses this incident and defines it as getting roughed up So and the question is and I'm not asking this court to find that that one specific incident does equal Torture, but I am saying how many times does this have to happen to one person in order for it to equal torture? Because dr. Gonzalez and I know that he wasn't a doctor at the time, but he actually is now so I'll refer to him as that Dr. Gonzalez established that the moment that somebody gets arrested They are much more likely to be rearrested and given mr Amaya's experience when he was pistol-whipped and beaten before being taken into jail with no medical attention and held for a week How many times does that have to happen to? Mr. Amaya in order for him? in order to cut for that to constitute torture and and it's simply because the the It's very clear that what happened is that the police found that the police determined that he must be a gang member They went through the bus and just singled him out. So what you're looking at is There was no Dr. Gonzalez, there was no discussion of dr. Gonzalez's Discussion of the increased risk factors as as relates to mr. Amaya He's already been arrested. He's already been registered. He will he Dr. Gonzalez believes that he came he survived in El Salvador or he survived until he had this hearing simply because he came back to the United States and If he ends up back in El Salvador He's going to be seen as more of a risk to the police because he's going to be the he's going to be seen as a Which unfortunately didn't get to find too well in the expert testimony, but what is it that you want us to do? Well in this case, actually I'd like you to send it back to the immigration judge because the board did no analysis and the immigration judge did a very Very little analysis. I mean in this case the board of the air I mean we just can't send it back because we think there's a need for more evidence the heavy reliance on the Department of State country reports was the error all the immigration judge did was quote the country reports and a profile of asylum claims in this case and Say that these two government US government issued documents, which we can look at sort of out of a political perspective Especially given the timing of this case. Dr. Gonzalez did address the the El Salvador and the United States that were going on during this period of time So the habit that heavy reliance on these reports does not It's not reasonable. It ignores the rest of the evidence in the record and there was substantial evidence in the record aside from dr Gonzalez's testimony that there are paramilitaries and paramilitaries and death squads operating in El Salvador that off-duty police officers because they are Because El Salvador there there the police department is ill-funded that they are operating as vigilantes When they are off-duty that many people That numerous people have been killed in death squad style and that was never even Addressed by the immigration judge and there's a ton of evidence that was never addressed. There's one thing you said that At least for me cut my The reference to the prior incident when he was you know, he'd formerly been in El Salvador The IJ characterized that he says the respondent is tested Respondent has testified himself to an incident where he was taken off a bus by the police or a combination of police and military and roughed up and jailed Then the IJ goes on to say he did not testify to treatment arising to the level of torture as defined Earlier above What exactly did he testify to about that incident the mr. Amaya? Yes, mr. Amaya testified that he was pistol-whipped thrown to the floor Beaten I say pistol-whipped because he was hit with the back end of a rifle is what he stated Then he was thrown to the floor Beaten thrown to the ground beaten and then taken to jail and held for a week without any charges That was what mr. Amaya testified does that arise to the level of torture as defined in the case law I don't think that it rises to the level of torture once but I think if it if it's something that is likely very likely No, I understand the future. I guess the question is you don't think you're not contending that the IJ was Was made an incorrect factual finding that this would did not this incident did not arise to the level of torture No, I think that the court I think that that the case law is pretty clear that this I mean, it's borderline I do think that it's borderline I mean your point is I guess the IJ didn't give it any didn't give it enough consideration and the IJ also didn't give it Enough consideration to how often does is this going to happen in the future to mr. Amaya? He's already been arrested and thrown in jail once How many time and dr. Gonzales testified to the fact that just because of that it makes it more likely that he's going to be Arrested and thrown in jail again so how many times does somebody have to be beaten by the police for it to cross the line from police abuse to torture and of course the IJ did nothing to consider the issue of death squads Paramilitaries which the evidence in the record is very very clear are operating in within a little bit If you were to go back to the IJ Is there anything else you would add to the record Well, obviously this took place this hearing took place seven years or six years ago, so That that's that's difficult to address because of course six years is six years if there's anything else that I would add to the record It would be something it would be a number that I have since discovered was erroneous the 38,000 number the 38,000 number Is actually the number of people who were deported to all of Central America. I looked it up and Actually in 2005 1,900 gang members were and I'm not I'm not asking I'm just answering the judges 1900 gang members were Deported to El Salvador according to migration information org in April 2006 and in January and February there's evidence in the record of this of 2005 522 People In El Salvador in only two months met with violent deaths, so actually judge White's determination of 38,000 19,001 can you show that if we would be able to get closer to that if the actual accurate numbers were Addressed I don't know I guess I guess this is all speculation. Yes, you're 522 of gang members deported No, okay, no, unfortunately Good job in Los Angeles Dr. Gonzalez addresses that I Dr. Gonzalez addresses that they don't Account for who was who? Okay. Nobody. All right. Thank you. Thank you for thank you We're from the government Okay Hey, please the court Derek Smith for the Attorney General Again, the only issue in this case is whether the record compels the conclusion that mr Am I has shown that he's more likely than not to be tortured that may not be the only question in this case to be One question I have is did the IJ use an incorrect? Legal standard for evaluating the evidence that this statement on page 9 of the IJ report is Problematic isn't it? It is not as well phrased as it might be your honor. That's certainly true my the way that I read that is that the immigration judge was trying to show the scope of Torture that would have to be shown which is more than 50% of people who are similarly situated to mr Amaya and effectively although I mean certainly it would be I think impossible to show a literal exact number of people He was trying to explain that based on the country reports and even the expert testimony There's no indication that torture was on that level was it was anywhere near that number But doesn't that doesn't the case require a personalized evaluation of mr Amaya's situation not a general notion of How many people who are deported get tortured Yes, your honor does have to be individualized of course the immigration judge did address his specific Circumstances in discussing the past events and and effectively assumed that he might be subject to something similar in the future and There is a lot of focus on country conditions simply because that's the most Helpful non-anecdotal evidence of what's likely to happen in the country as a whole But that doesn't mean there was a lack of individualized analysis. I mean the individual analysis and not evidence in this case. I'm sorry About mr. Amaya was simply his past experiences Which is what the what the immigration judge did actually discuss on page eight through nine explaining that he was roughed up That is Getting whacked in the head is roughed up I Understand your honor that that is also ill-chosen language, and it is an oral decision and These things unfortunately are not always phrased as well as they might be of course and this is a serious situation But under the court's case law this type of thing is not torture. There's a case on the versus Keisler in which Petitioner was taken into police custody and beaten four times and the court found that although that might be persecution. It's not torture can Let me see if I can review what I think the evidence was in this case. Mr. Amaya testified That's correct. There was an expert Yes, and there was a country report Yes, John. Is it whether it was there other evidence other than that? There were other documents submitted There was the issue paper on asylum claims And the profile of asylum, yes, that's right, that's right And I'm sorry, I can play to the country report and the issue paper. They're similar in a lot of ways your honor there's a letter from the Asylum Affairs Office and there's there's some other letters and Some other general sort of country. Well, I'm trying to look at mr Amaya side of the case his evidence to support his cat claim was largely his testimony and the expert Yes, your honor and some general country conditions information. That's correct And and as in the previous case the immigration judge didn't accept the experts conclusion, but did consider it Effectively, I mean the 19,001 number notwithstanding the conclusion that this evidence was simply anecdotal was well supported and and The immigration judge did look at what? Dr. Gonzalez did say but just didn't find that that established that it was more likely than not that mr Amaya was going to be tortured in the future Based on the general country condition Do you have any response to the claim that the country report is not reliable because of the political connections between the United States and El Salvador and the timing of those country reports Yes, your honor Respectfully that position doesn't hold up under this court's case law The court has said numerous times that State Department country reports are entitled to great weight because of the best evidence of country conditions  The court can't Decide that it doesn't trust the State Department under its case law and then find that any decision relying on State Department reports is just unreliable Did mr. Gonzalez point to any specific evidence as to why he believed those reports were unreliable? Yes, he talked about the United States and the El Salvadorian government's involvement in the Iraq war together specifically And how they might be reluctant to say something bad about their allies in the military industrial complex Did you point to any specific evidence because other than that? Well, I just want to know are you aware of any specific evidence that mr Gonzalez pointed to other than the relationship between the United States and the government of El Salvador Not that I recall your honor. There was nothing specific to say that any About the fact that he believed that deaths went unreported and so reports about the number of deaths might Be understated and the fact is that it's mr Maya's burden to show that it's more likely than not that he'll be tortured So saying that there's a dearth of evidence doesn't really help him very much because he's the one responsible for providing the evidence so although He may believe that this is far more common than the State Department can show he's unable to refer to any specific evidence about that There's also the the death squad issue Although he did mention death squads and the possibility that there's this vigilante action on cross-examination He admitted that no one knows who's behind the death squads. And so the question as to whether The Salvadoran government would acquiesce and what they do is There's effectively no evidence that they would at all because we don't even know who they are and that's what mr Amaya's own experts said on that issue If there are no further questions, thank you. Okay. Thank you Let's see, this is You may have gone over your time, but did you have anything I'll give you a minute to just Just briefly I would state that on page 285 of the I believe it's the director of the religious task force who does discuss the operations of these death squads and says that What's going on? Is that the police are ill-equipped and this was I believe in a 2004 2005 report from? And it's I'm citing page 285 Where she she states the police officers are ill-equipped To fight this gang war and everybody agrees that this I don't think anybody here agrees thinks that this gang war is illegitimate I think it's just illegitimately being executed but the She says that what's going on is off-duty police officers Our police officers are taking the law into their own hands because they are ill-equipped. So there is more than just dr Gonzalez's testimony to support his claim that death squads and Paramilitaries are operating in the in within El Salvador that coupled with the fact of course that these deaths are simply not being investigated It equals acquiescence at least by the Salvadoran government. Okay. Thank you. Thank you very much counsel We appreciate your arguments in this matter. We'll submit it at this time
judges: Erickson, Paez, Hurwitz